# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR RECONSIDERATION

## NO. 03-10-00453-CR

**Jason Mack, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-08-904089, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## S U P P L E M E N T A L   O P I N I O N

In his motion for reconsideration, Jason Mack reurges his assertion that he participated in the crimes alleged only under duress from threats to his and his wife's safety. In that motion, for the first time in this appeal, Mack cites to excerpts from the reporter's record of his 2008 trial as support for his argument that his acquittal in that trial on the charge of robbing Hwang Pollock collaterally estopped the State's further prosecution of him on the charge of robbing Melvin Kirk—the charge to which Mack pleaded guilty. Because we reach the same resolution of his arguments as we did on original submission, we will deny his motion for reconsideration. This opinion supplements our opinion on original submission.

Mack cites the following excerpt of testimony from Pollock describing what happened when Mack pulled a gun upon the Kirks' arrival:

A. He brandished it at the husband of the couple first, and then right when I seen him brandish it, it seems like he was going to point it at me and tell me not to go nowhere, but right when he was fixing to tell me, I took off running down the path, dirt path.

Q. And so when you saw that gun, did you feel threatened?

A. Yes, ma'am.

Q. And did you feel that you were in fear for your safety?

A. Yes, ma'am, I was ducking and running.

Q. Did you fear that if you stayed there you may be hurt physically or perhaps killed?

A. Probably—I don't—probably. I don't know. It was just a scary event.

Mack contends that this shows Pollock was robbed along with the Kirks. He also cites to testimony supporting his assertion that he participated in the robberies under duress. Mack contends that, because the quoted testimony from Pollock contains the elements of the offense of robbery, the only way the jury could have acquitted him of robbing Pollock is by finding that Mack proved his defense of duress.

Mack fails to acknowledge the existence of contrary evidence and fails to credit the jury's role in assessing credibility. Other witnesses testified regarding the events at the door to the game room. Melvin Kirk testified that Pollock was standing near the door when the Kirks arrived,

but that Pollock "was backing up so I figured something was wrong." The following exchange then occurred during Melvin Kirk's testimony:

A. Actually he was backing up, and then when he walked out, then he was gone. He was running down the road.

Q. Do you know why he took off running down the road?

A. Yeah, because he pulled a gun.

. . . .

Q. So when he pulled out the gun, what did he do?

A. He pointed it at me.

Another section of Melvin Kirk's testimony is less consistent with Pollock's testimony:

Q. Okay. And then the man stuck his head out the door—

A. Right.

Q. —after that? And told you to come in or ordered you to come in?

A. Right.

Q. And Mr. Pollock took off; is that right?

A. Yeah, when he opened the door and came out, then that's when the Asian guy took off.

A section of a detective's report, read as part of the State's question to Melvin Kirk, is inconsistent with Pollock's testimony. The statement provided in part as follows: "The Kirks stated they saw Pollock run away. The Kirks said Mack pulled up his white shirt and pulled a black handgun from

3

his pants and pointed it at him. Kirk stated Mack told them to go inside the game room." In context, that recitation indicates that Pollock ran away *before* Mack displayed the gun. Melvin Kirk did not recall what he told police, however. Angel Kirk testified that she, too, saw Pollock backing away from the door when they arrived. The following exchange occurred in her testimony:

> A. And then he said something about robbery or something, and then he took off running.
>
> Q. Okay. What do you recall happening next?
>
> A. When he said "robbery," I just yelled out "9-1-1." I don't know why. I just did that. And after that a guy came out of the door and pointing a gun at my husband, and I was still in the car.

The jury could reasonably have interpreted this testimony to mean that Pollock ran away before Mack pulled the gun.

Mack's testimony plainly contradicted Pollock's recitation of events at trial and his own theory of collateral estoppel. Mack testified, "I am the person who answered the door. That is the truth. But I'm not the person who had the weapon. At the time he opens the door, I just stick my head around the corner; right? And he bolts. He runs like hell. As soon as he sees me, he runs. He runs."

Based on reasonable credibility choices from this testimony, the jury could have acquitted Mack of robbing Pollock without regard to his duress defense. The jury charge with regard to Pollock required the jury to assess whether Mack

> did then and there while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally, or knowingly, threaten or place Hwang Pollock in fear of imminent bodily injury or death, and during the

4

commission of the offense the said Jason Mack did then and there use or exhibit a deadly weapon, to wit: firearm.

The jury did not have to accept Pollock's version of events without modification by other witnesses' testimony. A reasonable jury could have concluded, based on the evidence above—including Mack's own testimony—that Mack did not commit aggravated robbery of Pollock because (1) Mack did not exhibit a firearm to Pollock before Pollock ran away or (2) Pollock ran away before Mack or his alleged confederates could demand, much less complete, any transfer of property. *See* Tex. Penal Code Ann. §§ 29.02, 29.03, 31.03 (West 2011). Either conclusion would allow the jury to acquit Mack of aggravated robbery of Pollock without considering Mack's duress defense. Therefore, we conclude that the jury did not necessarily decide that Mack's duress defense had merit when acquitting him of robbing Pollock. That acquittal, therefore, did not collaterally estop the State from further prosecution of Mack for robbing Melvin Kirk. *See Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002).

We deny Mack's motion for reconsideration and reiterate our affirmance of Mack's conviction, based on his plea of guilty, for aggravated robbery with a deadly weapon of Melvin Kirk.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: January 5, 2012

Do Not Publish

5